**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

**UPSTATE ORAL & MAXILLOFACIAL**
**SURGERY, P.A.**

        **Plaintiff,**

  **v.**

**AIRGAS USA, LLC**

        **Defendant.**

**Case No.:**

**CLASS ACTION**

## CLASS ACTION COMPLAINT

Plaintiff Upstate Oral & Maxillofacial Surgery, P.A. files this Class Action Complaint against Defendant Airgas USA, LLC on behalf of itself and all others that are similarly situated. In support thereof, Plaintiff states the following:

### I.  NATURE OF THE CASE

1.  Plaintiff brings this action to challenge Airgas's widespread and systematic practice of overcharging its customers through two separate, but related coordinated schemes: deceptive, unfair, and unlawful "fuel surcharges" and price increases.

2.  Airgas is one of the largest suppliers of gases in the United States, with more than $5 billion in annual revenue.  It markets, sells, and distributes gas products and supplies to small businesses like Plaintiff.

3.  Airgas charges its customers for products, such as oxygen or nitrous oxide, as well as for the use of equipment, like cylinders, to hold these products.  However, in addition to these amounts, Airgas also charges a fee it represents to customers as a "fuel surcharge."   As multiple courts have recognized, the term "fuel surcharge" has a specific, understood meaning and in using

this term, Airgas represents that it charges the fuel surcharge to recover the increased fuel costs it incurs in delivering products to its customers, that the fuel surcharge varies in accordance with Airgas's increased fuel costs, and that the revenue from the fuel surcharge is used to offset those increased costs.

4.      In truth, Airgas's fuel surcharge was not designed to cover anything related to fuel, has no relation to Airgas's actual fuel costs, and is not used by Airgas to offset its increased fuel costs.  The amount of the fuel surcharge does not change in connection with Airgas's costs. Further, Airgas recovers any increases in fuel costs it might incur in delivering products through a separate "delivery fee" that it also imposes on customers, as well as through the base prices it charges.  Airgas uses the fuel surcharge simply to generate extra profit at its customers' expense, all the while deceiving customers into believing that the fee is a legitimate charge directly related to actual increased fuel costs it incurs, which it falsely claims it cannot control.  While the "fuel surcharge" appears to be related to fuel costs, Airgas actually retains the money from this purported offset and passthrough as profit.

5.      Additionally, Airgas has carried out a systematic practice of unlawfully raising prices, often after locking customers into long-term contracts. Like thousands of other small businesses, Plaintiff pays Airgas for products and equipment at a "set" rate, in Plaintiff's case pursuant to a standard, preprinted contract.  Notably, this contract is uniform among putative class members in all relevant aspects and contains an auto-renewing, three-year term.  The primary purpose of the form contract is to establish fixed monthly prices a given customer will pay Airgas.

6.      The contracts specifically restrict Airgas's ability to increase these prices where "[c]ost increases may necessitate a revision of prices…."  Even then, for Airgas to properly pass through such cost increases through price increases, it must provide customers 30 days written

notice before doing so, thus allowing customers an opportunity to avoid the increases by obtaining a competing offer. Airgas, in violation of this provision, unilaterally imposes significant price increases that are not necessitated or tied to any "cost increases," and does so without providing the contractually-mandated notice. The result is that customers, having agreed to a price Airgas represents as fixed, end up paying far more.

7.    Airgas's conduct is a breach of contract, a violation of the duty of good faith and fair dealing that underpins those contracts, and has resulted in Airgas being unjustly enriched. Further, this case presents a prototypical situation for class treatment. Airgas's conduct—including all relevant practices, deception, representations, documents and omissions—is uniform among all customers. The application of uniform law to a common course of conduct will determine liability for the classes as a whole, ensuring that the rights of thousands of small businesses are vindicated through the efficiency of a single trial.

## II.  JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $5,000,000, the proposed class consists of more than 100 members, and minimal diversity exists (Plaintiff is a citizen of South Carolina and Defendant's only member, Airgas, Inc. is a citizen of Pennsylvania and Delaware).

9.    This Court has personal jurisdiction over Airgas USA, LLC because it is authorized to do business in and in fact does business in this District. The conduct at issue in this case occurred in this District, and Airgas USA, LLC could reasonably anticipate litigation in this District under traditional notions of fair play and substantial justice.

10.    Venue is proper in this Court under 28 U.S.C. § 1391. Plaintiff is located in this District and the conduct giving rise to Plaintiff's claims occurred in this District. The contractual

agreement at issue was made and is to be performed in this District. The causes of action originated in this District and the fees at issue were charged and paid in this District.

### III.     PARTIES

11.     Plaintiff Upstate Oral & Maxillofacial Surgery, P.A. is a South Carolina entity with its principal place of business in Spartanburg County, South Carolina.

12.     Plaintiff's experience with Airgas is typical of the classes in all relevant aspects. Plaintiff applied for an account with Airgas and entered into the form contract at issue with Airgas. Plaintiff was affected and damaged by Airgas's unlawful practices complained of herein.

13.     Airgas USA, LLC is a wholly-owned subsidiary of Airgas, Inc., a Delaware corporation with its headquarters in Pennsylvania. Airgas USA, LLC is the entity that is responsible for the conduct at issue herein and which received the revenue form the fees and pricing practices at issue herein.

### IV.     FACTUAL ALLEGATIONS

14.     Airgas is one of the largest gas distribution companies in the United States, with more than a million customers, and over $5 billion in annual revenue.

15.     Plaintiff is locally owned and operated oral surgery practice in Spartanburg County, South Carolina. For its business, Plaintiff requires a certain grade of oxygen and nitrous oxide, as well as related equipment, like cylinders to hold the gases.   Like thousands of other small businesses, Airgas agreed to provide these products to Plaintiff pursuant for a fixed price.

16.     And, like thousands of other small businesses, after entering into this agreement— and locking customers into long term contracts—Airgas unilaterally imposes deceptive and unfair "fuel surcharges" and systematically increases prices with no contractual justification.

17.     First, the fees Airgas calls "fuel surcharges," are not, in fact true fuel surcharges at

all. They are not—in intent or effect—related to Airgas's increased fuel costs, charged to recovered such increased costs, or applied to recoup such costs. Rather, Airgas's "fuel surcharges" are nothing more than profit enhancers that Airgas misrepresents as "fuel surcharge" to deceive customers as to their purpose and nature. And, further, the purported increased fuel costs which justify the "fuel surcharges" are already recovered by Airgas through a separate "delivery fee" and through the base prices Airgas charges.

18.     Second, Airgas imposed unlawful, deceptive, and unfair price increases. These price increases are not, as contractually mandated, "necessitated" by "cost increases." Nor does Airgas provide the required notice before force-charging these increases. Rather, after intentionally promising a set price for equipment and products, Airgas carries out a deliberate scheme to repeatedly increase these prices. Upon information and belief, it does so through a consistent, centralized automated price increase process that was intended to glean millions of dollars of unearned profit from its customers.

A.     **Airgas's Deceptive And Unfair Fuel Surcharge.**

19.     Airgas charges its customers a fee it calls a "fuel surcharge." It does so purportedly to recover the increased fuel costs it incurs in delivering products to customers. Generally, the fuel surcharge is a flat amount that is the same for each customer. Airgas periodically increases the amount of the fuel surcharge.

20.     Airgas uniformly uses the term "fuel surcharge" to charge this fee to Plaintiff and putative class members. It does so consistently and continually, including every time it assesses the fee on monthly invoices.[1] Airgas chose this term for a reason: "fuel surcharge" has a common, understood meaning for any reasonable consumer, including for Plaintiff and putative class

---

[1] Plaintiff received such invoices and misrepresentations.

members. That is, the term "fuel surcharge" indicates that this is a fee charged to recover fuel costs incurred by the provider, is related to such costs, and is used to offset or recover such costs.

21. Multiple courts have recognized that the usage of this specific term conveys this meaning to customers. *See, e.g., Deere Constr., LLC v. Cemex Constr. Materials, LLC,* 198 F. Supp. 3d 1332 (S.D. Fla. 2016) ("What is allegedly deceptive is that the so-called 'fuel surcharges' and 'environmental charges,' labeled as such by Defendants, were not in fact designed to cover anything related to fuel or the environment. Defendants chose the two adjectives that describe the fees being assessed. Each adjective carries meaning"); *Dover v. British Airways, PPLC (UK)*, 2013 WL 5970688, at *4 (E.D.N.Y. Nov. 8, 2013) ("The plain meaning of the term 'fuel surcharge' is a supplemental charge that is reasonably related to or based upon the cost or price of fuel. This understanding comports with conventional usage."). The Oxford English Dictionary defines "surcharge" as "an additional charge or payment."

22. By using the term "fuel surcharge"—as opposed to a fee term that is general or accurate, like "service charge" or "additional profit fee"—Defendant deliberately mislead Plaintiff and putative customers as to the nature, purpose, and use of this fee. Airgas has intentionally deceived Plaintiff and each putative class member into believing that the fuel surcharge is directly related to Airgas's actual fuel costs, is calculated using such costs, and will be used to offset such costs.

23. In truth, the fuel surcharge is wholly unrelated to Airgas's actual or increased fuel costs, and is not charged to defray those increased costs. Airgas does not apply the money received from the fuel surcharge to offset its increased fuel costs; rather, it is recognized as revenue and contributes directly to Airgas's profit.

24. The method by which Airgas determines the fuel surcharge has no relation to its

increased fuel costs or to any changes in those costs. It is arbitrary in that the only driving factor is the profit Airgas seeks to derive from the fuel surcharge while maintaining the false appearance of the fee as a legitimate charge related to fuel costs. Airgas has done no legitimate analysis to determine the proper amount of the fuel surcharge in connection to its actual increased or decreased fuel costs. Airgas has no internal process or justification for the fuel surcharge and the methodology—or lack thereof—by which Airgas charges it demonstrates that this fee is actually a hidden price increase that Airgas falsely represents to be a fuel surcharge reasonably related to the increased fuel costs it incurs in delivering products.

25. Indeed, the fuel surcharge does not fluctuate in any way with Airgas's fuel costs and has increased while its per-customer fuel costs have decreased. That the amount of Airgas's fuel surcharge is wholly untethered to actual fuel costs is indicative of the falsity and unfairness of this fee. For example, the fuel surcharge in October 2017 was $1.50, and the retail price of diesel was $2.82.[2] By October 2018 Airgas had raised the fuel surcharge almost 100% more than the increase in the cost of fuel over that same time span. In fact, in its annual report filings, Airgas has stated that its "gross profits" increased year over year, in part as a result of "margin expansion on price increases and surcharges…."[3] The only way in which Airgas's profit margin increases based upon surcharges is when those surcharges are profit to begin with, and, further, profit which is not tied to any offsetting cost.

26. Additionally, Airgas already fully recovers the increased fuel costs that purportedly justify the fuel surcharge through a separate "delivery fee" it charges when it delivers products. Airgas does not incur any increased fuel costs outside those already recovered through these

---

[2] https://www.eia.gov/dnav/pet/pet_pri_gnd_a_epd2d_pte_dpgal_w.htm.
[3] https://www.airgas.com/2015annualreport/download/airgas2015_management_ dsc.pdf.

separate delivery fees, and Airgas increases the "delivery fee"—which is substantial, and often increased, reaching more than $15 per delivery—routinely. Airgas further recovers its purported increased fuel costs through the prices it charges customers. These prices include the individual component costs of Airgas's business, including—specifically—the costs of fuel and other overhead. When setting prices, Airgas takes into account its fuel costs to recover such costs, and the fuel surcharge is a deceptively named hidden price increase.[4]

27.      Airgas also has omitted material facts regarding the fuel surcharge. For example, Airgas does not disclose that the fee is not related to Airgas's increased or actual fuel costs, that that Airgas's increased fuel costs are not a factor in the amount of the fuel surcharge, that the amount of the fuel surcharge is not tied to any legitimate government index, and that the fuel surcharge is recognized as profit. Airgas does not disclose its actual fuel costs to customers nor does it disclose the methodology, to the extent there is one, used to determine the amount of the fuel surcharge. In truth, Airgas devised, implemented, and set the amount of the fuel surcharge simply to increase its profits without any intent of recovering the increased energy costs they incur in servicing customers. Airgas knows when it enters into an agreement with a customer that the customer will pay substantially more than the agreed upon service rate through a fuel surcharge which is entirely unfair, deceptive and/or misleading. Airgas does not disclose this fact to its customers.

28.      Airgas has consistently and continually misrepresented the nature and purpose of the fuel surcharge. It does so to mislead its customers into believing that this is a legitimate fee

---

[4] *See, e.g.,* https://www.airgas.com/medias/Jan-2017-News-Release-Airgas-Announces-Pricing-Actions.pdf?context=bWFzdGVyfHJvb3R8R8NDkyOT
V8YXBwbGljYXRpb24vcGRmfGhhYS9oMTMvMTE0OTAwNTQ1NzAwMTQucGRmfDhiZ
TY5ZGU0MWE5ZTJjNjhkOTNlYzIzMzY1YzEzMTA3NzQ1MTIyMTY3ZWE0YTllYmI0OW
Q5NmM3MTFiYzFiMjM.

which is directly related to increased fuel costs Airgas incurs in delivering products.  This practice was designed by Airgas to deceive its customers, is likely to deceive those customers acting reasonably under the circumstances, and did in fact deceive Plaintiff and putative class members in that each paid the "fuel surcharge" to their detriment.   This practice is inherently unfair.  Through the deceptive and unfair fuel surcharge, Airgas has unlawfully garnered millions of dollars from customers it has not earned.

29.     Further, to reiterate, Plaintiff does not allege that it did not know about the "fuel surcharge" or that this fee was not listed as a "fuel surcharge" on the invoices Defendant sent every month. Rather, Plaintiff alleges that the "fuel surcharge" is deceptive and unfair because it is not— in design, intent, or effect—related to anything having to do with fuel.  Neither Plaintiff nor any putative class member could have known that the "fuel surcharge" is actually an illegitimate mechanism designed to increase Airgas's profits rather than offset costs Airgas actually incurred.  Airgas never accurately disclosed the true purpose or effect of the fuel surcharges.  It simply charged a fee that appeared to any reasonable consumer to be related to fuel costs, and then retained that fee as profit for itself.

**B.     Airgas's Unlawful, Unilateral Price Increase Practice.**

30.     Airgas uses identical, form agreements to contract with customers. Every member of the Price Increase Class entered into an effectively identical contract.  The contract is a single page agreement where all relevant terms are pre-printed by Airgas. It contains blanks where the customer name and contact information is entered and both parties may sign and date and a list where the type of equipment and product being provided by Airgas—along with fixed prices—are specified. The form contract also contains an integration clause, establishing that it "and the schedules referred to herein, embodies the entire agreement and understanding of the  parties….",

and a three-year term, which auto-renews unless notice is given a full year before renewal.

31.     The form agreement stablishes that Airgas can only increase the fixed prices when "cost increases [] necessitate[] a revision of prices from time to time for gases or products sold under this agreement."  And, even then, Airgas can only implement such increases if it gives appropriate "written notice."  This notice provision allows customers to find a better quote from a competitor of Airgas.  If Airgas can't meet this quote, the customer is allowed to exit the long-term agreement early.

32.     Despite the express limitations on the circumstances and amounts by which Airgas could increase prices, Airgas carried out a systematic and deliberate practice of repeatedly increasing prices without contractual authorization. Airgas induces customers into entering into form contracts with fixed prices while knowing, but not disclosing, that it has an internal corporate practice and strategy of continually, invariably, and unlawfully increasing prices for the products and equipment it provides.

33.     Upon information and belief, these price increases are directed by Airgas's corporate officers as part of a broad strategy to increase revenue and profit and are carried out through an automated process using Airgas's customer relationship management system.

34.     The amount of the price increases vary, but are significant, and can result in customers paying more than 12% than agreed each year.  Airgas's price increase practices have been in place since, at least, 2016.  These unilateral automated price increases are not allowable under the form contract that Plaintiff and each class member entered into, and are deceptive and unfair.  Airgas has not experienced any "cost increases [that] necessitate" such price increases.  Nor do its price increases reflect such increases.  Further, upon information and belief, Airgas does not provide customers with the contractually-mandated 30 days' notice prior to imposing such

price increases.

35.    There is no legal justification for Airgas's practice of unilateral, systematic price increases. The form contract, which Airgas drafted and presents as a contract of adhesion, does not allow for them in these circumstances.[5]  Airgas does not provide notice of such increases and it knows when it presents contracts for fixed prices that these prices will rise precipitously and continually.  Airgas's practices breach the form contract it entered into with Plaintiff and thousands of others small businesses across the country, violates the duty of good faith and fair dealing that underpins that contract, is fraudulent, and has resulted in Airgas being unjustly enriched at its customers' expense. Through its unlawful conduct, Airgas has wrongfully taken millions of dollars from its customers over a period of years.

**C.    Neither Plaintiff, Nor Any Putative Class Member, Had Full Knowledge Or Paid The Fuel Surcharges Or Price Increases "Voluntarily."**

36.    No putative class member, including Plaintiff had "full knowledge" of the facts pertaining to the "fuel surcharge" or price increases such that their payment of these charges may be determined to be "voluntary" under applicable law.[6]  For example, Defendant did not disclose—and in fact, actively concealed and misrepresented—the true nature and purpose of the fuel surcharges and price increases. The only method by which any customer could have determined that the fuel surcharges and price increases did not relate to any actual costs, but rather were unlawful charges that Defendant misrepresented to customers—while at the same time recovering for such purported costs through other means—would involve information (such as financial data

---

[5]  Additionally, the form contract at issue contains an integration clause, which limits its interpretation to its written terms and prohibits any change or amendment to those terms.
[6]  "[D]etermining the state of Plaintiff's knowledge, and thus the voluntariness of payment, are fact-intensive inquiries properly reserved for any motion or motions for summary judgment the parties may decide to file at the close of discovery." *In & Out Welders, Inc. v. Sunbelt Rentals, Inc.*, No. CV 7:16-04021-MGL, 2017 WL 2255780, at *3 (D.S.C. May 23, 2017).

in Defendant's general ledger and internal communications) that were never available to customers.

37.     Further, Plaintiff and each putative class member was under a contractual, legal obligation to pay the invoiced charges to Defendant.  Upon information and belief, Defendant enforces its form contracts—including punitive measures and terms—to ensure that customers cannot escape them, even if such customers could have known that the fuel surcharges and price increases were unlawful and deceptive.  Thus, additionally, any payments could not be "voluntary."

## V.     CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and proposes the following classes:

**The Fuel Surcharge Class:** All persons or entities who reside in states other than Florida, Georgia, or Arkansas who, during the relevant time period, paid Airgas a "Fuel Surcharge."

**The Price Increase Class:**

All persons or entities who reside in states other than Florida, Georgia, or Arkansas who, during the relevant time period, paid more than their contractually-agreed upon price as a result of Airgas's automated price increases.

39.     Excluded from the proposed classes are members of the judiciary who preside over this case or related litigation, entities currently in bankruptcy, entities whose obligations have been discharged in bankruptcy, and governmental entities.  Also excluded from the proposed classes are any persons or entities which entered into non-form contracts which specifically set or contemplate fuel surcharges or price increases in a manner different to the standard contracts and practices at issue in this case.

40.     Plaintiff maintains the right to create additional subclasses or classes, if necessary.

41.     Plaintiff also reserves the right to revise these definitions if discovery reveals that it is necessary to do so to maintain cohesive classes which do not require individual inquiry to determine liability.

### A.     Existence And Predominance Of Common Questions Of Law And Fact.

42.     Airgas engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation. This common course of conduct—imposing fuel surcharges that were deceptive and unfair, and imposing price increases that were unlawful—effected class members in the exact same manner. The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from Airgas's common conduct. A single, uniform, pre-printed contract will govern all class members' contractual claims.

43.     This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist. Such common questions include, but are not limited to, the following:

a.     Whether Airgas used standard form contracts with customers;

b.     Whether Airgas imposed price increases on putative class members who entered into the standard contract;

c.     Whether Airgas's standard contract only allowed Airgas to increase prices in response and to reflect cost increases;

d.     Whether Airgas's standard contract only allowed Airgas to increase prices after 30 days written notice;

e.     Whether Airgas implemented the price increases through an automated customer

relationship management system;

f.  Whether the price increases Airgas imposed were not authorized by its standard form contracts;

g.  Whether the price increases Airgas were enacted not in good faith;

h.  Whether Airgas engaged in deceptive or unfair conduct in representing and implementing the fixed prices and the price increases;

i.  Whether Airgas charges customers a fuel surcharge;

j.  Whether the fuel surcharge Airgas imposes is designed or intended to recover Airgas's increased fuel costs;

k.  Whether the fuel surcharge Airgas imposes is reasonably related to Airgas's increased fuel costs;

l.  Whether Airgas recovers the same costs which purportedly justify the fuel surcharge through the prices it charges and delivery fees;

m.  Whether Airgas uses revenue from the fuel surcharge to offset its increased fuel costs;

n.  Whether Airgas was unjustly enriched through its conduct.

**B.     Numerosity.**

44.     The total number of members of each putative class is so numerous that individual joinder is impracticable.  Airgas has over a million customers nationwide.

**C.     Typicality.**

45.     The claims of the named Plaintiff are typical of the claims of the classes.  Plaintiff, like other class members, entered into the form contract, paid automated price increase that were not legally justified, paid deceptive and unfair fuel surcharges, and had the true nature of the price

increases and fuel surcharges concealed from it. Plaintiff was subject to, and harmed by, the exact same common policies and practices which effected all class members.

**D.    Adequacy.**

46.    Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members. Plaintiff shares the same interests and was harmed by the same conduct as each other class member. Resolution of this case will inherently vindicate and redress the interests of Plaintiff equally with class members. Plaintiff has retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the classes.

**E.    Superiority and Manageability.**

47.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is large, individual damages for a given plaintiff are comparatively small and class members have little incentive to pursue individual claims. The interests of judicial economy favor adjudicating the claims for the Plaintiff classes in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision. The proposed class definitions are objective and class membership is easily determined using customer information and financial records maintained by Airgas in electronic form. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

## COUNT I
## BREACH OF CONTRACT
### (Fuel Surcharge Class)

48.     All allegations and paragraphs in this complaint are incorporated by reference.

49.     Plaintiff and each member of the class entered into form, written agreements with Airgas.

50.     Plaintiff and each member of the class performed on their agreements.

51.     As set out herein, through its practice of charging a fuel surcharge of arbitrary amount unrelated to its actual or increased cost of fuel, Airgas breached the agreements by charging more than the amounts agreed upon for products and service.

52.     Plaintiff and each member of the class have been directly and proximately harmed by Airgas's breach of contract in that each paid more than agreed through the fuel surcharges.

## COUNT II
## BREACH OF CONTRACT THROUGH BREACH OF
## THE DUTY OF GOOD FAITH AND FAIR DEALING
### (Fuel Surcharge Class)

53.     All allegations and paragraphs in this complaint are incorporated by reference.

54.     To the extent necessary, this count is pled in the alternative.

55.     Plaintiff and each member of the class entered into form, written agreement with Airgas.

56.     Plaintiff and each member of the class performed on their agreements.

57.     As alleged above, Airgas breached the agreements at issue by charging a fuel surcharge that was completely unrelated to its actual or increased cost of fuel.

58.     Airgas failed to perform on the agreements in good faith. Airgas breached the contracts arbitrarily and capriciously. It failed to fulfill any discretionary duties it might have under the contract in setting the amount of the fuel surcharges reasonably and in good faith. Airgas's

uniform course of conduct in charging a fuel surcharge unrelated to its actual or increased cost of fuel lacks honesty in fact and is inconsistent with the justified expectation that Airgas would charge a reasonable amount for the fuel surcharge commensurate with its actual or increased fuel costs. Through its wrongful conduct, Airgas unfairly prevented Plaintiff and each member of the class from receiving the full benefits of their agreements.

59.     Plaintiff and each member of the class have been directly and proximately harmed by Airgas's breach of the covenant of good faith and fair dealing in that each paid an unlawful and arbitrary fuel surcharge.

### COUNT III
### UNJUST ENRICHMENT
### (Fuel Surcharge Class)

60.     All allegations and paragraphs in this complaint are incorporated by reference.

61.     To the extent necessary, this count is plead in the alternative.

62.     Through its fuel surcharge practices, Airgas received money from the putative class which in equity and justice it should not be permitted to keep.   By charging and collecting fuel surcharges which it knew to be not justified by any fuel cost it incurred, by suppressing and misrepresenting material facts (including that it would charge a fuel surcharge that was unrelated to its actual or increased fuel costs), and by engaging in other wrongful and unlawful conduct as set out herein, Airgas obtained money which properly belongs to the putative class.  The benefit conferred by the putative class was non-gratuitous and Airgas realized value from this benefit. It would be inequitable for Airgas to retain this benefit.

63.     Plaintiff and each member of the class have been directly and proximately harmed by Airgas conduct in that each paid an unlawful and arbitrary fuel surcharge.

<u>**COUNT IV**</u>
**BREACH OF CONTRACT**
**(Price Increase Class)**

64.    All allegations and paragraphs in this complaint are incorporated by reference.

65.    Plaintiff and each member of the class entered into form, written agreements with Airgas.

66.    Plaintiff and each member of the class performed on their agreements.

67.    As set out herein, through its practice of unilaterally increasing rates not in accordance with any contractual provision, Airgas breached the agreements.

68.    Plaintiff and each member of the class have been directly and proximately harmed by Airgas's breach of contract in that each paid more for products and/or equipment.

<u>**COUNT V**</u>
**BREACH OF CONTRACT THROUGH BREACH OF**
**THE DUTY OF GOOD FAITH AND FAIR DEALING**
**(Price Increase Class)**

69.    All allegations and paragraphs in this complaint are incorporated by reference.

70.    To the extent necessary, this count is pled in the alternative.

71.    Plaintiff and each member of the class entered into form, written agreement with Airgas.

72.    Plaintiff and each member of the class performed on their agreements.

73.    As alleged above, Airgas breached the agreements at issue by unilaterally increasing rates not in accordance with any contractual provision.

74.    Airgas failed to perform on the agreements in good faith.  Airgas breach the contracts arbitrarily and capriciously. It failed to fulfill any discretionary duties it might have under the contract in altering prices reasonably and in good faith.  Airgas's uniform course of conduct in raising prices lacks honesty in fact and is inconsistent with the justified expectation that Airgas would increase rates reasonably. Through its wrongful conduct, Airgas unfairly prevented Plaintiff

and each member of the class from receiving the full benefits of their agreements.

75.     Plaintiff and each member of the class have been directly and proximately harmed by Airgas's breach of the covenant of good faith and fair dealing in that each paid an unlawfully increased rate.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Price Increase Class)**

76.     All allegations and paragraphs in this complaint are incorporated by reference.

77.     To the extent necessary, this count is plead in the alternative.

78.     Through its price increase practices, Airgas received money from the putative class which in equity and justice it should not be permitted to keep.   By charging price increases which it knew to be not justified by any cost it incurred, by suppressing and misrepresenting material facts (including that it would charge far more than agreed or represented), and by engaging in other wrongful and unlawful conduct as set out herein, Airgas obtained money which properly belongs to the putative class.  The benefit conferred by the putative class was non-gratuitous and Airgas realized value from this benefit. It would be inequitable for Airgas to retain this benefit.

79.     Plaintiff and each member of the class have been directly and proximately harmed by Airgas conduct in that each paid more for products and services than they rightfully owed.

**COUNT VII**
**FRAUD IN CHARGING THE FUEL SURCHARGE**
**(On Behalf of Plaintiff Individually)**

80.     All allegations and paragraphs in this complaint are incorporated by reference.

81.     To the extent necessary, this count is plead in the alternative.

82.     Airgas made fraudulent representations and omissions regarding the fuel surcharge, as set out herein, including that this fee is related to the cost of fuel, designed to recoup those costs,

and used to offset such costs. Airgas further failed to disclose material facts, including the true

nature and purpose of the fuel surcharge. Airgas did so, from its corporate headquarters, on every

invoice charging "fuel surcharges."

83.     Plaintiff justifiably relied upon Airgas' representations to its detriment in that it

paid the improper fuel surcharges.

**COUNT VIII**
**FRAUD IN IMPOSING PRICE INCREASES**
**(On Behalf of Plaintiff Individually)**

84.     All allegations and paragraphs in this complaint are incorporated by reference.

85.     To the extent necessary, this count is plead in the alternative.

86.     Airgas falsely represented the price it would charge for goods and services,

knowing that it intended to unilaterally increase prices without justification. Airgas represented

specifically that it would only increase prices under certain conditions and through certain

procedures, knowing that it would not follow these limitations. Airgas failed to disclose material

facts to Plaintiff regarding the prices, Airgas's intent to increase prices, and that Airgas's price

increases were not justified by any related cost

87.     Plaintiff justifiably relied upon Airgas' representations and omissions and was

damaged in that it paid increased prices.

**VII.    PRAYER FOR RELIEF**

88.     Plaintiff, on behalf of itself and each member of the putative classes, demands all

damages available to it, including all unlawful price increases paid to Airgas, all fuel surcharges

paid to Airgas, restitution, and interest.

**Trial By Jury**

Plaintiff and the Classes are entitled to, and demand, a trial by jury.

Dated: October 11, 2019                    Respectfully submitted,

      HODGE & LANGLEY LAW FIRM, PC

                                   **_s/T. Ryan Langley_**
                                   **T. Ryan Langley**
                                   Federal ID No. 002537
                                   229 Magnolia Street
                                   PO Box 2765
                                   Spartanburg, SC 29304
                                   (864) 585-3873

                                   *Attorneys for Plaintiff*